# UNITED STATES *v.* BALTIMORE & OHIO RAILROAD COMPANY.

STATUTES; SAFETY APPLIANCE ACTS; SUPREME COURT OF DISTRICT OF COLUMBIA.

1. Though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature.
2. Under the act of Congress of March 2, 1893, and amendments thereof, known as the safety appliance acts, which provide that suits to recover penalties for violation thereof shall be brought in "the district court of the United States having jurisdiction," the special term of the supreme court of the District of Columbia, known as the "circuit court," has jurisdiction to entertain a suit for the recovery of the penalty for a violation occurring in this locality.

No. 1583.   Submitted December 7, 1905.   Decided February 6, 1906.

HEARING on an appeal (specially allowed) by the United States from an order of the Supreme Court of the District of Columbia sustaining a demurrer to a declaration in a suit by the United States to recover a penalty for the violation of the act of Congress of March 2, 1893, as amended.   *Reversed.*

The COURT in the opinion stated the facts as follows:

This is a special appeal from the ruling of the supreme court of the District of Columbia sustaining a demurrer to a declaration filed by the appellant, the United States, in a suit to recover from the Baltimore & Ohio Railroad Company, the appellee, a penalty of $100 for the violation of an act of Con-

gress, approved March 2, 1893, amended by the acts of April 1, 1896, and the act of March 2, 1903, these collectively being known as the safety appliance acts.

Section 4 of the first-named act [27 Stat. at L. 531, chap. 196, U. S. Comp. Stat. 1901, p. 3174] declares it "unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or hand-holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars," etc.

Section 6 of that act as amended April 1, 1896 [29 Stat. at L. 85, chap. 87], imposes upon such common carrier "hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act   *   *   *   a penalty of $100 for each and every such violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed."

The act of March 2, 1903 [32 Stat. at L. 943, chap. 976, U. S. Comp. Stat. Supp. 1905, p. 603], extends the provisions and requirements of the prior act, and provides that these "shall be held to apply to common carriers by railroads in the Territories and the District of Columbia, and shall apply in all cases;   *   *   *   and the provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grab-irons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the Territories and the District of Columbia," etc.

This action is an action of debt, and the declaration contains two counts: The first count declares that a certain car described, not provided with grab irons or hand-holds as required by law, was hauled by the appellee from Washington, within the District of Columbia, to Pencoyd, in Pennsylvania. The second count recites that the same car, so unprovided with grab irons, etc., was hauled over the appellee's railroad in the

District of Columbia into the State of Maryland. The declaration claims $100, the penalty named in the statute.

The appellee demurred and the court sustained the demurrer.

*Mr. M. H. Beach, Mr. D. W. Baker,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant, for the United States, appellant.

*Messrs. Hamilton & Colbert* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

The appellee, in support of the demurrer, insists that the special term of the supreme court of the District of Columbia, known as the "circuit court," has no jurisdiction to try the cause set out in the declaration.

The appellee says that the act of Congress, as amended, in terms provides that the penalty here sued for, the violation of the act being admitted, can only be recovered in a suit to be brought in the district court of the United States; that the United States district courts constitute a distinct system, not including the supreme court of the District of Columbia. If Congress has conferred upon the supreme court of the District the jurisdiction possessed and exercised by the judges of the circuit and district courts of the United States, Congress has failed in these statutes to express its intention to give this court this jurisdiction in this class of cases, and has not provided the supreme court of the District, having power to hold a term as district court of the United States, with the machinery to try this case, for the United States district court holding a special term has no power to summon and impanel a jury, and in a case like this the appellee is entitled to a trial by jury according to the common law. The appellee concludes, therefore, that this act is not applicable to the District of Columbia, and suggests as a consolation that the penalty for the violation set out in the declaration could be recovered in the United States district court for Maryland, or in the same court in the State of

Pennsylvania, and that probably Congress purposely limited the punishment for such violation of a very humane statute to the Federal courts in the States, intentionally remitting punishment for violations of laws intended to protect brakemen and other railway employees everywhere to courts in all the States and Territories of the Union except to the courts in this Federal District where Congress sat when it enacted these statutes to promote the safety of employees and travelers upon railroads everywhere in the Union.

Surely Congress did not intend to deprive railway employees, while in this District, from the benefits of this legislation, because by the amendment of March 2, 1903, it expressly provided "that the provisions and requirements of the act" of March 2, 1893, as amended by the act of April 1, 1896, "shall be held to apply to common carriers by railroads in the Territories and the District of Columbia." It is the duty of the courts of this District to give effect to this law, if they have the power.

In *Johnson* v. *Southern P. Co.* 196 U. S. 1, 14, 49 L. ed. 363, 368, 25 Sup. Ct. Rep. 158, the Supreme Court criticised the circuit court of appeals for its adverse decision, saying: "We are unable to accept these conclusions, notwithstanding the able opinion of the majority, as they appear to us to be inconsistent with the plain intention of Congress, to defeat the object of the legislation, and to be arrived at by an inadmissible narrowness of construction."

"And as Chief Justice Parker remarked, conceding that statutes in derogation of the common law are to be construed strictly, 'they are also to be construed sensibly, and with a view to the object aimed at by the legislature.' *Gibson* v. *Jenney,* 15 Mass. 205." *Johnson* v. *Southern P. Co.* 196 U. S. 17, 49 L. ed. 369, 25 Sup. Ct. Rep. 158.

"The primary object of the act was to promote the public welfare by securing the safety of employees and travelers, and it was in that aspect remedial, while for violations a penalty of $100, recoverable in a civil action, was provided for, and in that aspect it was penal.   *   *   *   Moreover, it is settled that, 'though penal laws are to be construed strictly, yet the inten-

tion of the legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the legislature.' *United States* v. *Lacher,* 134 U. S. 624, 33 L. ed. 1080, 10 Sup. Ct. Rep. 625." *Johnson* v. *Southern P. Co.* 196 U. S. 18, 49 L. ed. 369, 25 Sup. Ct. Rep. 158.

In the same case the Supreme Court referred to the history of this legislation, and quoted from President Harrison's message, with approval, his statement that during a single year 2,660 employees were killed and 26,140 were injured for want of such safety appliances, and, also, President Harrison's emphatic utterance: "It is a reproach to our civilization that any class of American workmen should, in the pursuit of a necessary and useful vocation, be subjected to a peril of life and limb as great as that of a soldier in time of war." The strong expressions of the Supreme Court and its purpose to give effect to the safety appliance acts confirm us in believing that Congress did not intend to exclude the District of Columbia from the benefits conferred by this act upon all the rest of the Union.

Section 6, before quoted, imposed the penalty here sued for, "For each and every such violation, to be recovered in a suit or suits to be brought by the United States District Attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed." It designated the United States District Attorney, a Federal official provided in every State and Territory and in the District of Columbia, and named the only court of the United States armed with process and with power to try common-law civil actions for recovering penalties and affording juries to try the offender according to the common law. It is conceded that in the forty-five States the statute can be enforced. Its beneficent operation, by the argument of the appellee, is denied in all the Territories and in the District of Columbia. In the Territories, several of them now gridironed with railroads, there is no district court of the United States. There are only supreme courts of the Territory and district courts of the Terri-

tory, and here we have only the supreme court of the District of Columbia.

The safety appliance acts were a regulation of commerce. In the safety appliance acts Congress was exercising its power to regulate commerce, and, as was said in *Stoutenburgh* v. *Hennick,* 129 U. S. 148, 32 L. ed. 639, 9 Sup. Ct. Rep. 256 : "The power granted to Congress to regulate commerce is necessarily exclusive whenever the subjects of it are national or admit only of one uniform system or plan of regulation throughout the country. * * * The business referred to is thus definitely assigned to that class of subjects which calls for uniform rules and national legislation, and is excluded from that class which can be best regulated by rules and provisions suggested by the varying circumstances of different localities and limited in their operation to such localities respectively."

There seems little doubt, therefore, that Congress intended the acts of March 2, 1893, and of April 1, 1896, to regulate all the railroads throughout the country in all parts of the country, including the District of Columbia; but, if there were a doubt, it was removed when, by the act of March 2, 1903, Congress expressly provided that the provisions and requirements of these prior acts "shall be held to apply to common carriers by railroads in the Territories and the District of Columbia."

Shortly before it passed this statute Congress had provided, in section 1 of the Code of this District, that "all general acts of Congress not locally inapplicable in the District of Columbia, and all acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States, in force at the date of the passage of this act, shall remain in force, except in so far as the same are inconsistent with, or are replaced by, some provision of this Code." [31 Stat. at L. 1189, chap. 854.]

It would seem, therefore, that when Congress, in section 6 of this statute, imposed a penalty for every violation of these safety appliance statutes, and directed that the same should be recovered in a suit to be brought in the district court of the United States "having jurisdiction in the locality" where such

violation shall have been committed, Congress intended to include the court of the United States in the District of Columbia, which was the proper tribunal to take jurisdiction in this locality of such a suit for a penalty incurred by reason of a violation of this statute in this District.

"Congress has express power 'to exercise exclusive legislation in all cases whatsoever' over the District of Columbia, thus possessing the combined powers of a general and of a State government in all cases where legislation is possible." *Stoutenburgh* v. *Hennick,* 129 U. S. 147, 32 L. ed. 637, 9 Sup. Ct. Rep. 256.

In the new Code of the District of Columbia Congress had very recently declared, by section 61, that the supreme court of the District "shall possess the same powers and exercise the same jurisdiction as the circuit and district courts of the United States, and shall be deemed a court of the United States;" and,

In section 62, had provided that the justices of said court "shall severally possess the powers and exercise the jurisdiction possessed and exercised by the judges of the circuit and district courts of the United States;" and,

By section 63, that "said court shall hold a general term and special terms;" and,

By section 64, that "the special terms of said court shall be known, respectively, as the circuit court, the equity court, the criminal court, the probate court, and the district court of the United States."

While granting the supreme court of the District the powers of a district and of a circuit court of the United States, since Congress possessed the combined powers of a general and of a State government over the District of Columbia, Congress had wisely distributed the powers of this court so as to meet the necessities of a State judiciary system combined with the necessities of a Federal judiciary system, which latter includes the circuit and district courts of the United States. Therefore, Congress further provided—

In section 66, that "all causes in said court shall be heard and determined in special terms. And the several terms are declared to be terms of the supreme court, and the    *   *   *

acts of said several terms shall be deemed  *  *  *  acts of the supreme court;" and,

In section 69, further provided "all common-law civil causes shall be tried and determined in the circuit court, except as hereinafter provided;" and

In section 83, provided that "the trial of crimes and misdemeanors  *  *  *  shall be in the supreme court of the District of Columbia holding a special term as a criminal court, except such misdemeanors as are within the jurisdiction of the police court;" etc., and

In section 84, that "the said District court shall have and exercise the same powers and jurisdiction as the other district courts of the United States, and such further special jurisdiction as may from time to time be conferred by Congress, and of all proceedings instituted in exercise of the right of eminent domain."

In section 85 Congress defined the jurisdiction of the equity court and the practice therein.

Section 116 defines the jurisdiction of the probate court.

Sections 198 to 217, inclusive, provide for the drawing and impaneling of petit juries in the circuit and criminal courts as well as of grand jurors in the criminal courts.

Thus, the supreme court of the District of Columbia was made by Congress a depository of the powers of Federal and State courts combined, and therefore, while it was given all the powers of a district court of the United States, the supreme court's special term, known as the "circuit court," also became the depository of its power over all common-law civil actions such as the circuit court in the State of Maryland tried and determined, and also over all common-law civil actions such as a district court of the United States could try and determine.

Therefore, when Congress extended the safety appliance acts to the District of Columbia, Congress knew that the special term described as the circuit court of the District of Columbia was the court to take jurisdiction of a suit for the penalty prescribed in section 6, and the United States District Attorney properly brought the suit in that court as the court "having ju-

risdiction in the locality where such violation" had been committed.

It so happened that by section 84 Congress gave to the District court the powers and jurisdiction of the other district courts of the United States, and further jurisdiction specified in that section, and knew that it had not provided the District court in special term with a jury to try a suit like the action in this case, which is triable by a jury according to the common law. This instrument of justice Congress had distributed to the circuit court by section 69, before mentioned.

We are of opinion, therefore, that such power to try common-law civil actions such as this suit, for this penalty, Congress intended should be tried in the circuit court special term of the supreme court of the District of Columbia.

The remarks of Justice Matthews in *Metropolitan R. Co.* v. *Moore,* 121 U. S. 571, 30 L. ed. 1026, 7 Sup. Ct. Rep. 1334, in speaking of the reorganization of the courts of this District, show that Congress established here a single court and distributed the powers thereof, and the language applies to the present status of these courts under the Code: "It established a single court to be called the supreme court of the District of Columbia, having general jurisdiction in law and in equity. It gave to that court the same jurisdiction as was then possessed and exercised by the circuit court of the District of Columbia, and to the justices of the new court the powers and jurisdiction of the judges of the circuit court. It also gave to each of the justices of the court power to hold a district court of the United States for the District of Columbia, with all the powers and jurisdiction of other district courts of the United States; and also to hold a criminal court for the trial of all crimes and offenses arising within the District, with the same powers and jurisdiction as was then possessed and exercised by the criminal court of the District of Columbia. All the courts, therefore, previously existing in the District of Columbia, as separate and independent tribunals, having special and diverse jurisdictions, were consolidated into the new supreme court of the District of Columbia." We conclude that the supreme court of this Dis-

trict is the tribunal in this District, according to the distribution of its powers and duties as made by Congress, having jurisdiction to enforce the penalties provided by this general law regulating commerce, the safety appliance acts, whenever the same may be violated in this District, and that the District attorney has rightly instituted this suit in the special term of the circuit court "having jurisdiction in this locality" to try such suit for such penalty for such violation of the safety appliance acts as is set forth in the declaration, and that the learned court below should have overruled the demurrer of the appellee. This is an action of debt. It is a civil cause and a common-law action, and the circuit court is the special term which affords a jury trial to the appellee.

Chapter 3 of the Revised Statutes relating to "District Courts —jurisdiction," section 563 (U. S. Comp. Stat. 1901, p. 455), defines the jurisdiction of district courts in the United States. Its third paragraph gives to the United States district courts jurisdiction "of all suits for penalties and forfeitures incurred under any law of the United States," and its fourth paragraph gives to the same court jurisdiction over civil "suits at common law, brought by the United States or by any officer thereof authorized by law to sue." It is of common knowledge that for nearly a half century all such suits have been brought in the circuit court special term of the supreme court of the District; yet, if the appellee's contention be just, all such suits and judgments thereon were void; and, because the United States district court in special term lacks a jury to try such causes, the United States itself, at its seat of government, is impotent to recover in any action included in paragraphs 3 or 4 just mentioned.

Rightly, as we think, the circuit court of the District has heretofore held that such jurisdiction exercised by district courts of the United States in the States of the Union was in this Federal district conferred upon the circuit court's special term of the supreme court of the District.

The appellee's reasoning would not only prevent the United States from recovering the penalty provided in the safety appliance acts, within the District of Columbia, but also within

the Territories of the United States.   As we have said, the Territories have only a supreme court of the Territory and local district courts of the Territory.   They have one district court of the United States.   There are no district courts of the United States in the Territories in the sense of the Constitution.   *McAllister* v. *United States,* 141 U. S. 174, 182, 35 L. ed. 693, 695, 11 Sup. Ct. Rep. 949.

The Supreme Court, we think, has applied the reasoning we have endeavored to follow, in the case of *The Coquitlam* v. *United States,* 163 U. S. 346, 41 L. ed. 184, 16 Sup. Ct. Rep. 1117. That was a suit in admiralty brought by the United States in the district court of Alaska for the forfeiture of the steamer Coquitlam for violation of revenue laws.   From a decree in favor of the United States an appeal was prosecuted to the circuit court of appeals for the ninth circuit.

By the 6th section of the act of March 3, 1891, chap. 517, the circuit court of appeals has the power to review the final decisions in the district court and the acts of the circuit courts in all cases, other than those mentioned in the 5th section of the act, unless otherwise provided by law.   And by the 15th section of the same act it is declared : "That the circuit court of appeal, in cases in which the judgment of the circuit courts of appeal are made final by this act, shall have the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several Territories, as by this act they may have to review the judgments, orders, and decrees of the district court and circuit courts; and for that purpose the several Territories shall, by orders of the Supreme Court, to be made from time to time, be assigned to particular circuits."   26 Stat. at L. 826, 830, U. S. Comp. Stat. 1901, pp. 549, 554.   In execution of the duty imposed by that section this court, by an order promulgated May 11, 1891, assigned the Territory of Alaska to the ninth judicial circuit.

"The jurisdiction of the circuit court of appeals for the ninth circuit to hear and determine this cause was disputed by the United States upon these grounds: 1. That the district court of Alaska is not a district court within the meaning of the 6th

section of the above act of 1891, and was not a district court belonging to that circuit.    2. That the district court of Alaska is not a supreme court of a Territory within the meaning of that act and the above order or rule of this court."

The Supreme Court met the difficulty by reasoning similar to our own in this case, saying:    "But we are of the opinion that such appellate jurisdiction may be exercised in virtue of the general authority conferred by the 15th section of the act of 1891 upon the circuit court of appeals to review the judgments of the supreme court of any Territory assigned to such circuit by this court.    That was necessarily so interpreted by this court when, by its order of May 11, 1891, 139 U. S. 707, 34 L. ed. 1128b, 11 Sup. Ct. Rep. IV., Alaska was assigned to the ninth circuit.    Alaska is one of the Territories of the United States. It was so designated in that order, and has always been so regarded.    And the court established by the act of 1884 is the court of last resort within the limits of that Territory. *    *    *    No reason can be suggested why a Territory of the United States, in which the court of last resort is called a supreme court, should be assigned to some circuit established by Congress that does not apply with full force to the Territory of Alaska, in which the court of last resort is designated as the district court of Alaska.    *The title of the territorial court is not so material as its character.*    Looking at the whole scope of the act of 1891, we do not doubt that Congress contemplated that the final orders and decrees of the courts of last resort in the organized Territories of the United States—by whatever name those courts were designated in legislative enactments—should be reviewed by the proper circuit court of appeals, leaving to this court the assignment of the respective Territories among the existing circuits."    *The Coquitlam* v. *United States,* 163 U. S. 352, 41 L. ed. 186, 16 Sup. Ct. Rep. 1117.

In a matter of extradition, in a very recent case in the Supreme Court, it was urged that Revised Statutes, sec. 1014 [U. S. Comp. Stat. 1901, p. 716], does not authorize a removal to the District of Columbia, as it is not a district of the United States within the meaning of the law; and the supreme court of

the District is not a court of the United States as the words are used in that section, and the Supreme Court held that the District of Columbia is a district of the United States, to which a person under indictment for a crime against the United States may be removed for trial within the meaning of sec. 1014, Rev. Stat. The court said: "Criticism is made of this act in that it only authorizes a removal *from* the District of Columbia to other districts, but that it does not authorize the removal of persons arrested in some other judicial district to the District of Columbia. But we think that, if there were any doubt upon the subject still remaining, it was removed by the new Code of the District of Columbia, taking effect January 1, 1902, wherein it is declared by section 61 that the supreme court of the District 'shall possess the same powers and exercise the same jurisdiction as the circuit and district courts of the United States, and shall be deemed a court of the United States;' and by section one (1) of the same Code that 'all general acts of Congress not locally inapplicable in the District of Columbia, and all acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States, in force at the date of the passage of this act, shall remain in force, except in so far as the same are inconsistent with, or are replaced by, some provision of this Code.' In conclusion of this branch of the case, it may be said that any construction of the law which would preclude the extradition to the District of Columbia of offenders who are arrested elsewhere would be attended by such abhorrent consequences that nothing but the clearest language would authorize such construction. It certainly could never have been intended that persons guilty of offenses against the laws of the United States should escape punishment simply by crossing the Potomac river, nor, upon the other hand, that this District should become an Alsatia for the refuge of criminals from every part of the country." *Benson v. Henkel,* 198 U. S. 14, 15, 49 L. ed. 923, 924, 25 Sup. Ct. Rep. 569.

In conclusion, we believe "the title of the court is not so material as its character," that in this District the special term of

Vol. XXVI.—38.

the circuit court is the court of the United States having juris-
diction in this locality to hear and determine this suit for the
penalty provided by the safety appliance acts for a violation of
the provisions of that law committed in the District of Co-
lumbia.

The learned court should have overruled the demurrer of the
defendant below, the appellee.

The demurrer being overruled, the ruling of the court is re-
versed and this cause is accordingly remanded to the Supreme
Court of the District of Columbia, that the further proceedings
in said cause may be had in accordance with this opinion.

*Reversed.*